```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
MOHAMED KAMARA and MABINTY       :
KAMARA,                          :
                                 :
                                 :
          Plaintiff,             :    04 Civ. 626 (THK)
                                 :
    -against-                    :
                                 :    MEMORANDUM OPINION AND ORDER
                                 :
UNITED STATES OF AMERICA,        :
                                 :
          Defendant.             :
--------------------------------X
```
**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

The parties in this personal injury action have consented to trial before this Court, pursuant to 28 U.S.C. § 636(c). Presently before the Court are several in limine motions, which are addressed herein.

I. <u>Defendant's Motion to Exclude Medical Records</u>

Defendant United States of America ("Defendant" or "the Government") seeks to exclude from evidence all records originating from Celtic Medical P.C. ("Celtic"), which purportedly reflect medical care Plaintiff Mohamed Kamara ("Plaintiff") received at Celtic. Defendant argues that its motion should be granted because (1) Plaintiffs failed to comply with Local Civil Rule 7.1 of the Southern District of New York, in responding to the motion, and (2) the records contain hearsay, have not been authenticated, and are untrustworthy.

    A. <u>Plaintiffs' Failure to Comply with Local Rule 7.1</u>

Defendant contends that Plaintiffs violated Local Civil Rule 7.1 because they failed to file a memorandum of law with their submissions in opposition to Defendant's in limine motion. (See

Reply Memorandum of Law in Further Support of Defendant's Motion <u>In Limine</u> to Exclude All Records Originating from Celtic Medical, P.C. ("Def.'s Reply"), at 2-4.) Instead of a legal memorandum, Plaintiffs' counsel merely filed an affirmation. (<u>See</u> Affirmation in Opposition to Defendant's Motion <u>In Limine</u> for an Order Precluding Celtic Medical Records ("Hoffman Aff.").) Moreover, the affirmation cites to no legal authority.

> Local Civil Rule 7.1 provides:
>
> Except as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be determined. Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default.

Local Civ. R. 7.1. "An affirmation alone will not satisfy the requirements of Rule 7.1." <u>Microsoft Corp. v. K & E Computer Inc.</u>, No. 00 Civ. 7550 (RLC), 2001 WL 332962, at *1 (S.D.N.Y. Apr. 4, 2001) (where "defendants only filed an affirmation in opposition to [plaintiff's] motion to dismiss, and they did not cite to any legal authority," the requirements of Rule 7.1 were not met); <u>Wenzhou Wanli Food Co., v. Hop Chong Trading Co.</u>, No. 98 Civ. 5045 (JFK), 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000) ("Submitting an affidavit rather than a memorandum of law is insufficient under Local Rule 7.1."); <u>East 65 Street Realty Corp. v. Rinzler</u>, No. 98 Civ. 6555 (RCC), 2000 WL 303279, at *3 (S.D.N.Y. Mar. 22, 2000)

2

(same).

Failure to file a memorandum of law in opposition to the opposing party's motion is, by itself, a sufficient basis to grant the motion. See Loew v. Kolb, No. 03 Civ. 5064 (RCC), 2003 WL 22271221, at *2 (S.D.N.Y. Sept. 30, 2003); Wenzhou, 2000 WL 964944, at *3; East 65 Street Realty Corp., 2000 WL 303279, at *2. Nevertheless, because the motion involves evidentiary issues on which the law is straightforward, in the interests of justice, the Court chooses to exercise its discretion to address the motion on its merits.

II. Admission of Celtic Records as Business Records Under Rule 803(6)

Defendant claims that the Celtic Records should not be admitted as business records under the hearsay exception set forth in Federal Rule of Evidence 803(6), because the source of the information for, and circumstances surrounding the preparation of these records, lack trustworthiness. As a corollary to this argument, Defendant contends that the Celtic documents have not been authenticated, as required by Federal Rule of Evidence 901(a).

A. Authentication

Federal Rule of Evidence 901(a) provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

3

F. R. Evid. 901(a). As the Second Circuit has observed, "Rule 901 does not erect a particularly high hurdle, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." United States v. Dhinsa, 243 F.3d 635, 658 (2d Cir. 2001) (internal quotation marks and citations omitted). "Rule 901's requirements are satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004) (internal quotation marks omitted) (quoting United States v. Pluta, 176 F.3d 43, 49 (2d Cir. 1999)).

Plaintiffs contend that the Celtic records were authenticated by Dr. Lev Tayts ("Tayts"), the former medical director of Celtic. Defendant responds, however, that Tayts's purported authentication was unreliable. For example, at his deposition, Tayts testified that he was the medical director of Celtic Medical P.C., from its inception in the year 2000, until it ceased to exist in 2002. (See Deposition of Dr. Lev Tayts, Jan. 25, 2005 ("Tayts Dep.") at 15-17, attached as Ex. B to Hoffman Aff.) Although Tayts claimed to be a salaried employee of Tayts, paid on an hourly basis for treating patients, and paid an additional sum for serving as medical director (Tayts Dep. at 21-23), various documents identify Tayts as an owner and the Chief Executive Officer of Celtic. (See

4

Defendant's Motion In Limine to Exclude All Records Originating from Celtic Medical P.C., Exs. C and D.)  Tayts also conceded that Celtic was registered in his name with the New York Department of State. (Tayts Dep. at 20-21.)

Moreover, Tayts purported to authenticate only one set of Celtic documents, which were produced in response to a subpoena issued by Defendant to Tayts.  However, those records were not maintained by Tayts, but were provided to him by Plaintiffs' counsel. (See Tayts Dep. at 14:16)  Plaintiffs' counsel claims to have secured the records from the Celtic custodian of records, (id. at 14:19), who Tayts could not identify (id. at 17:22).  These records were labeled Tayts Ex. 1 and were Bates-stamped "Celtic" 1 through 29.  Tayts did not attempt to authenticate any of the other medical records.  In addition, although Tayts casually stated that the records were Celtic records (id. at 15), it is apparent that some of the documents were not Celtic records, as they were written on the letterheads of other entities, such as West Tremont Medical Diagnostics, P.C., Precise Radiology, P.C., and Multiquest (P.L.L.C.). (Tayts Ex. 1, documents Bates-stamped Celtic 4-16.)  Tayts was incapable of authenticating these documents, as he was unable to provide any information about the corporate entities out of which they purported to originate, and Plaintiffs' counsel conceded that Tayts had no knowledge of entities other than Celtic. (Tayts Dep. at 25-28, 34-35.)  Therefore, Tayts could only

5

legitimately authenticate those documents which were on the Celtic Medical letterhead, and which appear to have been written by Dr. Montazem ("Montazem"), a former physician who worked at Celtic, or himself.

Some of the documents were on Celtic letterhead, contained notes which appeared to have been written either by Dr. Tayts or Dr. Montazem, and were identified by Tayts as Celtic documents. (See id. at 14-15; Documents Bates-stamped 1-3, 17-29.) As reasonable jurors could find that those documents were, in fact, Celtic documents, they have been sufficiently authenticated. No other documents were authenticated, and they are thus inadmissible.

B. Hearsay

Defendant contends that, although medical records are normally admissible under the business records exception to the hearsay rule, the Celtic records fail to meet the "trustworthiness" requirement of Federal Rule of Evidence 803(6) because: (1) Celtic Medical P.C. no longer exists, and no custodian of records is available to testify as to the method by which the records were generated and maintained by Celtic (see Memorandum of Law in Support of Defendant's Motion In Limine to Exclude All Records Originating from Celtic Medical P.C. ("Def.'s Mem.") at 10-11); and (2) the sworn statements of Dr. Tayts, and Dr. Montazem, the Celtic physician who purportedly treated Plaintiff, raise serious concerns about the accuracy, reliability, and trustworthiness of the records

6

(id. at 11-13).

Federal Rule of Evidence 803(6) provides, as an exception to the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6). "Medical records . . . can be admissible under Federal Rule of Evidence 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated." Hodges v. Keane, 886 F. Supp. 352, 356 (S.D.N.Y. 1995) (citing Romano v. Howarth, 998 F.2d 101, 108 (2d Cir. 1993)). "The principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." Saks Int'l, Inc. v. M/V "Export Champion", 817 F.2d 1011, 1013 (2d Cir. 1987). See also Romano, 998 F.2d at 108; Giles v. Rhodes, No. 94 Civ. 6385 (CSH), 2000 WL 1425046, at *8-9 (S.D.N.Y. Sept. 27, 2000).

When no "custodian of records or other qualified witness" is available to testify as to the trustworthiness of the "source of

7

information or the method or circumstances of preparation" of a record, it is ordinarily inadmissible under Rule 803(6). <u>United States v. Mason</u>, No. S17 96 Cr. 126 (JFK), 2000 WL 791926, at *1-2, (S.D.N.Y. June 19, 2000) (bill of sale from an auto dealership that no longer existed, and from which no employee could be located to authenticate the record, was inadmissible). However, the failure to have business records authenticated by the custodian of records does not necessarily preclude their admissibility. <u>See</u> <u>United States v. Manshul Construction Corp.</u>, No. 93 Civ. 0308 (JGK)(THK), 1996 WL 267945, at *5 (S.D.N.Y. May 20, 1996) ("Although it is not necessary that the foundation for the receipt of business records into evidence be laid by the person who prepared them, the Rule clearly requires that a foundation be established through a qualified witness.") (internal citations omitted).

Although Plaintiffs failed to produce the Celtic custodian of records, they argue that Dr. Tayts is a qualified witness who has authenticated the Celtic records and has established their trustworthiness. The Court can only partially agree. Tayts did not lay any foundation for the admission of the records. As discussed, the records were provided to Tayts by Plaintiffs' counsel (Tayts Dep. at 28:5), even though the document subpoena was addressed to Tayts (<u>see</u> <u>id.</u> at 26:22). After looking at the documents, Tayts merely stated that they were Celtic records. (<u>Id.</u> at 15:10.) He provided no testimony as to the method by which the

8

records were created, when they were created or by whom, how the records were kept, or any other details that would support the trustworthiness of the documents. In fact, as discussed, several of the documents are obviously not Celtic documents. (Tayts Ex. 1, documents Bates-stamped Celtic 4-16.) Moreover, Defendant has raised serious questions as to the legitimacy of Celtic's operation, including Dr. Tayts's role at Celtic.[1]

In addition, Defendant raises legitimate questions about the trustworthiness of the Celtic records. For example, Plaintiff claims to have been treated at Celtic primarily by Dr. Montazem, and many of the Celtic documents appear to have been completed by Montazem. Yet, Montazem submitted a sworn declaration in support of Defendant's motion, in which he stated that he had no recollection of treating Plaintiff, and his review of various Celtic documents purporting to relate to Plaintiff did not refresh his recollection. (See Declaration of H. Harry Montazem (Montazem

---

[1] In addition, Dr. Tayts identified only one page of the Celtic documents relating to Plaintiff Mohamed Kamara, which appeared to be in his handwriting, and which prescribed continued physical therapy. (Tayts Dep. at 18:24.) However, Tayts had no recollection of treating Plaintiff, and there is no evidence in the document as to the bases for the purported diagnosis of Plaintiff's condition, which required physical therapy. (See id. at 18-19, 30-31.) Moreover, when asked whether he knew whether Celtic was ever investigated by any state or federal entity, Tayts invoked the Fifth Amendment. (Id. at 35-36.) This testimony raises questions about both the trustworthiness of the documents, as well as the weight to be given the documents, even if they are admissible.

9

Decl."), ¶¶ 2-3.)[2] Based on his experience at Celtic, Montazem did not consider Celtic records to be reliable. (Id. ¶ 5.) He did not type or supervise the typing of the records, even those purportedly signed by him. (Id.) According to Montazem, typed records at Celtic often contained significant inaccuracies. (Id.) Moreover, according to Montazem, even those typed documents that appear to show Montazem's signature do not necessarily reflect that he had written and reviewed them, since the staff at Celtic had a rubber stamp with his signature, which was often placed on the typed records without his knowledge. (Id.)

Montazem's declaration certainly casts a cloud of suspicion over the trustworthiness of the Celtic records. Nevertheless, nobody questions that Celtic was functioning as a healthcare clinic and that Tayts and Montazem were employed by Celtic. Some of the documents are on Celtic letterhead, relate to what appear to be specific medical encounters with Plaintiff, and either contain Montazem's signature or were in Tayts's handwriting. Even in his declaration, Montazem did not explicitly state that he was not the author of the documents which appear to bear his signature, or that the documents did not accurately reflect his findings. Moreover,

---

[2] In settlement of a civil proceeding brought against him for violation of the Controlled Substances Act, Montazem surrendered his medical license in 2004. (See Montazem Decl. ¶ 1.) Montazem was terminated by Celtic the day after he testified at a deposition pertaining to a New York State investigation of Celtic. (See id. ¶ 6.)

10

Plaintiffs' attorney has not had an opportunity to question Montazem about the documents which contain his signature. Where records are kept in the regular course of business, and it is the regular practice of the business to make such records, "the principal means of establishing the reliability of a hearsay statement offered under [Rule 803(6)]" is that the person providing the information in the records have a business duty to do so. United States v. Reyes, 157 F.3d 949, 952 (2d Cir. 1998). The Court can reasonably assume that Montazem had a business duty to complete records documenting his examinations of patients, and his declaration does not indicate otherwise.

Although Defendant has raised serious questions about the trustworthiness of, and weight to be given to, the Celtic records, the Court reserves judgment on their admissibility until it hears testimony from Tayts and Montazem about the specific records in issue, as well as their general procedures in documenting patient encounters at Celtic and for maintaining Celtic records. Cf. Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc., No. 01 Civ. 3796 (PKL), 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) ("A motion in limine to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence. . . . The Court's ruling regarding a motion in limine is subject to change when the case unfolds.") (internal quotation marks omitted)(quoting

11

Luce v. United States, 469 U.S. 38, 41 (1984)). The remaining documents, which are not on Celtic letterhead and have no appearance of being written by either Tayts or Montazem, will not be admitted pursuant to the business records exception to the hearsay rule, since they have not been authenticated and no foundation for their admission has been established.

III. <u>Plaintiffs' Motion to Exclude Government Exhibits L, M, O, S, T, V, W, X, and Y</u>

Plaintiffs move to exclude (1) Government's ("Govt.'s") Exhibit ("Ex.") L, consisting of records received from the State Insurance Fund; (2) Govt.'s Ex. M, ISO Claimsearch documents; (3) Govt.'s Ex. O, medical records from Drs. Russell Berdoff and Ranjit Josiah; (4) Govt.'s Ex. S, medical records from Drs. Edward King and Ruvan Shein; (5) Govt.'s Ex. T, records from Rite Aid Corporation; (6) Govt.'s Ex. W, New York City Taxi and Limousine Commission records; (7) Govt.'s Ex. X, Social Security Administration records; (8) Govt.'s Ex. V., documents relating to a state court action entitled <u>Kamara v. Excellent Bagels</u>; and (9) Govt.'s Ex. Y, documents relating to a state court action entitled <u>Kamara v. City Line Hyundai</u>. Plaintiffs contend that these exhibits should be excluded pursuant to Federal Rule of Evidence 402, because they are irrelevant to this action, have no probative value, and are prejudicial. Defendant responds that Plaintiffs' motion should be denied because (1) Plaintiffs failed to comply

with Local Civil Rule 7.1, by failing to file a memorandum of law with the motion and failing to cite any legal authority in support of their motion; and (2) all of the exhibits are relevant to the issues of causation, damages, and Plaintiffs' credibility. The Court agrees.

Leaving aside the procedural defect in Plaintiffs' motion, which by itself merits denial of the motion, all of the proposed exhibits are relevant to Plaintiffs' claims and the Government's defenses because they may establish that Plaintiff Mohamed Kamara was involved in a prior accident, which he failed to disclose, and, as a result of that accident, he may have sustained injuries similar to the ones he claims in this action. Although Plaintiff contends that the exhibits relate to another individual, with a different social security number than his, Defendant has proffered evidence tending to establish that the Mohamed Kamara identified in the disputed exhibits is in fact Plaintiff. This issue can only be resolved at trial, as it turns largely on Plaintiffs' credibility. In addition, Government Exhibit Y, the transcripts of Plaintiffs' depositions from an action filed by Plaintiff Mabinty Kamara, contain sworn statements from the Plaintiffs which bear on Plaintiff Mohamed Kamara's ability to perform various tasks at a time subsequent to the accident in issue in this action. They are therefore relevant to determining the extent and consequences of the injuries Plaintiff claims to have suffered in the accident in

issue in this action, as well as Plaintiff's credibility.

All of the arguments Plaintiffs raise in support of their motion are relevant only to the weight the Court should accord these exhibits, rather than their admissibility. Moreover, while Plaintiffs' case may be harmed by the material in the exhibits, contrary to Plaintiffs' contention, such harm is not the "prejudice" which Federal Rule of Evidence 403 is intended to protect against. "The prejudice that Rule 403 is concerned with involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997) (internal quotation marks omitted) (quoting United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995)). Admission of the exhibits would not be unfair to Plaintiffs. Moreover, because this case will be tried to the Court, there is no chance of unduly prejudicing or confusing a jury. See Commerce Funding Corp., 2004 WL 1970144, at *5 ("While the Rules of Evidence apply with equal force in jury and non-jury trials, courts often apply the relevance standard with little rigor during a bench trial. The Second Circuit has noted that ordinarily it may be the more prudent course in a bench trial to admit into evidence doubtfully admissible records. While standards for admissible evidence are not out the window entirely in a bench trial, all doubts at a bench trial should be resolved in favor of admissibility.") (internal citations and quotation marks omitted).

Accordingly, Plaintiffs' motion to exclude Defendant's exhibits is denied.

IV. <u>Defendant's Motion to Bar Plaintiffs' Use of Deposition Testimony</u>

Defendant seeks to bar Plaintiffs' use of deposition testimony, in lieu of trial testimony, of Drs. Stanley Liebowitz, Lev Tayts, and Thomas Scilaris. These doctors treated Plaintiff Mohamed Kamara's injuries following his July 2001 accident. In addition, Dr. Liebowitz has been retained as Plaintiffs' expert. Defendant argues that the deposition testimony is inadmissible hearsay. Plaintiffs respond that the sworn deposition testimony is not inadmissible hearsay because (1) the requirements of Federal Rule of Evidence 804(b)(1) have been satisfied, (2) the deposition testimony falls within the residual exception to the hearsay rule, pursuant to Federal Rule of Evidence 807, and (3) it would be unnecessarily expensive and time-consuming to require the three doctors to testify at trial.

The deposition testimony is inadmissible hearsay. Although Rule 804 provides an exception to the hearsay rule for "[t]estimony given as a witness . . . in a deposition taken in compliance with law . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination," Fed. R. Evid. 804((b)(1), such testimony is not excluded as hearsay only "if the

15

declarant is unavailable as a witness." Fed. R. Evid. 804(b). See also United States v. Salerno, 505 U.S. 317, 321, 112 S. Ct. 2503, 2507 (1992) ("Nothing in the language of Rule 804(b)(1) suggests that a court may admit former testimony absent satisfaction of each of the Rule's elements."). Moreover, because Dr. Liebowitz has been retained as Plaintiffs' expert, an even greater showing than mere unavailability is required to excuse his attendance at trial. See Carter-Wallace, Inc. v. Otte, 474 F.2d 529, 536 (2d Cir. 1972); Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co., No. Civ.A.97-529, 2000 WL 135129, at *2 (D. Del. Jan. 13, 2000). Plaintiffs have made no such showing. They have not argued or demonstrated that the three physicians are unavailable to testify at trial. Accordingly, their deposition testimony is inadmissible hearsay.

Moreover, the deposition testimony does not fall within the residual hearsay exception provided by Federal Rule of Evidence 807. That Rule only applies to "[a] statement not specifically covered by Rule 803 or 804 . . . ." Fed. R. Evid. 807. Deposition testimony is covered by Rule 804, and the requirements for the admission of such testimony have not been satisfied.

To the extent that Plaintiffs wish to expedite the trial, they shall be permitted to submit their direct examination of these witnesses through affidavits. However, Defendant will not be deprived of the opportunity to cross-examine the witnesses before the Court. Contrary to Plaintiffs' contention, the Court has as

16

deprived of the opportunity to cross-examine the witnesses before the Court. Contrary to Plaintiffs' contention, the Court has as great a need to assess the witnesses' credibility as would a jury.

Accordingly, Defendant's motion to exclude the deposition testimony of Drs. Tayts, Liebowitz, and Scilaris is granted.

**Counsel are to appear at a final pretrial conference on October 6, 2005, at 11:00 a.m., in Courtroom 17A. They should come prepared to discuss settlement of the action and the scheduling of the trial.**

SO ORDERED.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: September 19, 2005
       New York, New York

Copies mailed to:

Heather K. McShain, Esq.
Assistant United States Attorney
86 Chambers Street
New York, New York 10007

David Hoffman, Esq.
Raskin & Kremins, LLP
160 Broadway - 4th Floor
New York, New York 10038